Case No. 14-5042 Douglas B. Huron and United States Society of Argumentative and Alternative Communication Appellants v. Beth F. Corbett in her official capacity as Acting Director of the United States Office of Personnel Management and Office of Personnel Management Mr. Fleming for the appellants, Mr. Fafenroth for the appellees Good morning, I'm Tillman Breckenridge. Let's just wait until everybody is out of the courtroom. Good morning, I'm Tillman Breckenridge of the William & Mary Law School and I'm just here to introduce Eric Fleming, a third-year law student at William & Mary Law School. We will argue on behalf of the appellants. We're glad to have you. Thank you. Good morning, Your Honors. May it please the Court, my name is Eric Fleming and I represent Mr. Douglas Huron, the appellant in this case. At this time, I'd like to reserve two minutes for rebuttal. Mr. Huron suffered an unavoidable procedural injury when OPM failed to negotiate with his insurance carriers to coverage the speech-generating device that he needs to the same extent that they cover other forms of medically necessary durable medical equipment. In Doe v. Define, this Court held that the Federal Employee Health Benefits Act requires OPM to negotiate with insurance carriers regarding the benefits that they provide. It further held in that case that in the course of those negotiations, it must consider not only the availability of catastrophic benefits, but also other forms of benefits and subscriber costs as well. The problem I have is that the procedural injury argument that you're making, you did not make below. In fact, in opposition to the motion to dismiss, based on standing, procedural injury doesn't appear at all in your brief. Well, Your Honor, we readily concede that we did not use the word procedural next to the word injury. But we disagree that this is an argument we didn't make. In fact, our complaint starts on page 7 of the Joint Appendix. Paragraph 2, Mr. Huron says that OPM has an affirmative duty to negotiate with insurance carriers. Next page, paragraph 5, he alleges that OPM failed to negotiate. Indeed, the district court itself noted that one of the injuries that Mr. Huron alleged was a failure to negotiate. This is something that we have raised from the very first days of this litigation. But in the opposition to the motion to dismiss, on page 13, footnote 9, you said, maybe not you, but whoever drafted this said, that the allegations made in paragraph 71A through C, which were these procedural injury allegations, simply summarize how OPM's substantive determinations may be explained in a procedural context and are not intended as stand-alone, remediable allegations of statutory violations. That's what you said below, that they're not intended as stand-alone, remediable allegations of statutory violations. Well, Your Honor, nevertheless, we did raise these issues in the complaint. It is true that in the memorandum in opposition, we acknowledge we could have done a better job of making it clear that this is, we were at that point trying to argue both a standard injury and also a procedural injury. But from the beginning, we have been trying to make this argument that we were essentially trying to argue both the procedural injury as well as the sort of standard. But you disclaimed any procedural injury, and you said in the prior footnote, footnote 8, that plaintiffs recognize that their prayer for relief may have unnecessarily confused this rather clear point, talking about what it is that they're seeking. When you say the relief that plaintiffs seek is simple, a declaration that OPM's 2012 approvals of plans that either fail to offer SGD coverage or provide more limited coverage than provided for other forms of DME is arbitrary and capricious, et cetera. So the remedy that you were seeking was to set aside this outcome and to order coverage by all plaintiffs, not a remedy of negotiate better. You disclaimed that in footnote 9. Well, Your Honor, I think that if you look to the complaint and the specific remedy that we asked for, among other things was we asked that the plans that had not provided SGD coverage and did not provide an actuarial basis for doing so be reopened so that it's reopened to negotiation. What we were asking for and what we've always been asking for is that OPM negotiate these plans or at least provide an actuarial basis for their failure to do so. Now, acknowledge we could have been more clear doing that at the district level, but we disagree that this is an argument that we waive. In fact, OPM has not set forth a waiver argument themselves. They've insinuated that one might exist to the extent that we've stated this injury in the complaint and all the allegations in the complaint must be construed as to do justice under the federal procedure. We have set forth the statement that OPM is required to negotiate and that they fail to do so. Now, under Doe v. Devine, this Court said that in the course of those negotiations, which are required under the statute, they have a duty not only to negotiate for catastrophic benefits, but they also have to consider the availability of other benefits and the cost to subscribers. That comports with Section 8902 subsection I of the Act, in which Congress mandated that there must be a reasonable relationship between the rates that are charged and the cost of benefits provided. And as the district court noted below, almost without exception, every large private sector employer covers these benefits to the same extent that they cover other forms of medically necessary durable medical equipment. Can I get clear of one thing? So, I just want to make clear that for purposes of appeal, your focus is now on these procedural injuries exclusively. That's correct, Your Honor. You're not asserting non-procedural traditional article III injury anymore. That's correct, Your Honor. You've completely abandoned that. Pardon me? You've completely abandoned that as a theory for jurisdiction. I believe that we have, yes, Your Honor. Can I say one other thing, too? The complaint kept talking about we need to ask the Secretary to invalidate these plans. But, of course, these are one-year plans, and time has passed by. The 2012 and the 2013 and the 2014 plans, and we're now in the middle of the 2015 open season. Has anything changed on the coverage for these sound-generating devices? No, Your Honor. To the best of my knowledge, nothing has changed with regards to the national plans for which Mr. Curon is eligible. My understanding at this point is that nothing has changed. They specifically excluded women coverage for speech-generating devices. And it's noteworthy because these are the only forms of medically necessary durable medical equipment that are specifically excluded or limited in this way. If you look to the GHA brochure that's included in the joint appendix, it includes a definition for durable medical equipment. Essentially, it's something that needs to be prescribed by the physician. It's medically necessary and serves a medical purpose. It's usable only by the patient for which it's prescribed for a long period of time. And if you look to the next page, there's a list of exclusions. The first item that's specifically excluded is the speech-generating devices, or I think the term that they use is computer programs that assist with communications and other programs. How would requiring the secretary to negotiate more or extract an explanation be of any benefit whatsoever to your client? How would it redress his injury in any way? Well, Your Honor, we believe that it will make it more likely that these plans will cover speech-generating devices to the extent that they cover other durable medical equipment. So procedural injury has to be bad. It's not just a violation of procedure. That procedure has to protect a substantive legal right or interest of the person that's asserting the procedural injury. And you've abandoned any claim of any alternative type of injury that that procedural injury would be protecting. So I'm trying to figure out, you can't just have a procedural injury in the void. But that seems to be what you're claiming here. We just want negotiation for negotiation's sake. Well, no, Your Honor. So what we're saying is that there is a protected procedural right under the statute. Mr. Giron has a particularized interest in his speech-sharing, in paying for the speech-sharing device, the particularized injuries that he has to pay for. It's out of pocket because it's excluded or limited under many of these plans, or the plans that do offer it do so at a substantially more expensive rate than what private sector employees would have to pay. Is Medicare still 80%? Correct. Is Medicare still 80% now in 2015? That's correct, Your Honor. And so the way the Coordination of Benefits Rules works here is that GHA would get the bill first, and it would pay whatever it's supposed to under their status quo. They pay nothing. So Mr. Giron would then receive a bill for $5,000. Medicare then would pay 80% of that. So he would be left to pay $1,000 out of pocket in that instance. And the act was passed in order to protect the interests of individuals situated like Mr. Giron. The act specifically was passed in order to – Wasn't the act passed to protect the collective interests of federal employees, the best bargain collectively that the Secretary could – or I'm sorry, that OPM could obtain, as opposed to an individual right from everybody to complain about what's in, what's out, which has a higher deductible? I don't see anything in DOE that says there's individual rights to insist on negotiation for individual terms of individual benefits. I don't think that they said that, Your Honor, but I think it's an inescapable conclusion based on the fact that the plaintiffs in that case were federal employees and the family members of federal employees who were affected by OPM's decision to acquiesce to the carrier's proposal to reduce catastrophic – It was a cross-cutting. It wasn't an individualized claim. I'm trying to figure out how this whole scheme works. if every single federal employee can insist that the terms of every single benefit that they might use be individually negotiated and explained by the director. Oh, no, Your Honor. So we're not saying that this is a right that Vest and Mr. Giron just individually invest in his position as a member of this – for lack of a better term, the protective group, the group that the statute was passed to benefit, the beneficiaries under these health care plans. Right, so you've got to be a federal employee. That's correct. That's a pretty large number. Or someone who is regarded as – Or a family member or anybody else. That's correct, Your Honor. Okay. Now, it's also not the case that this is something where every federal employee or every family member can bring any claim that they want to the district court and expect to get a remedy. Rather, this is a very unique claim. In 3902 subsection I, Congress said that the appropriate standard for making sure that a rate is reasonably or equitably flexed to the cost of benefits provided is the lowest scheduled plans provided by large private sector employers. Again, virtually every large private sector employer covers speech-sharing devices to the same extent as other forms of to their employees. The same is also true, incidentally, of every other federal program that provides insurance, whether we're talking about So there's only a claim if your plan doesn't treat it as favorably as lots of other plans? If those other plans are large private sector Where does the statute, when it says there's a duty to negotiate, limit it that way? Why would these procedural injuries be limited to that? The federal government's health insurance program is often the leader in coverage. So why wouldn't you have the same argument going, I don't care what the private companies are doing, you had a duty to negotiate and to at a minimum extract an explanation as to why my prescription deductible is what it is. I think it could be lower. Your Honor, again, what the plaintiff would have to state, the claim that the plaintiff would have to state is that there was no negotiation at all. And that would be sort of the difference. Now, under Dovey-Devine, this Court recognized that OPM does have discretion to negotiate and just simply challenging the results of those negotiations once those occur is beyond what a plaintiff would be able to challenge. Now, if the plaintiff can state a claim showing that there is a reasonable inference that OPM has failed to negotiate based on the fact that there is not a reasonable relationship between the rate that they're paying, which is consistent with large private sector employers' employees, and the benefits that they're receiving. And again, here, they're receiving an objectively inferior set of benefits. They're paying essentially the same. Well, as to this one thing, but everything's, you know, in health insurance plans, there's this is in, but that's out, and there's more of this and less of that. So you'd have to objectively show that the overall package is inferior to what they're getting elsewhere. And there's no allegation of that. Your Honor, we think that there's a reasonable inference that can be drawn in Mr. Huron's favor based on the fact that these plans are so cheap. These plans are so cheap? The form of the coverage is so cheap. Why would that matter? Because it's essentially impossible to trade it for anything, Your Honor. But you can say that with anything. Again, it's collective. When you talk about this many employees wanting this many benefits for this many things, it's the total package that you have to look at in an insurance policy. Well, that's right, Your Honor. And OPM does have, under Doe v. Define, the ability to show that they actually have negotiated this. If they've negotiated it away in favor of some other benefit, they have the discretion to do that under the Act. We acknowledge that. But Doe v. Define doesn't merely establish a standard of decision. It also shifts the burden of proof to OPM. OPM, at this point, the appropriate thing for them to do is to show an accounting of their negotiating objectives. But Doe v. Define was a completely different case because that was someone suing regarding mental health treatment, which was a subset of comprehensive care which the statute requires to be covered, right? Well, Your Honor, in the words of this Court, catastrophic coverage is required only as part of a broader FEHB objective to afford federal employees with the best possible health care at the lowest possible cost themselves. That's what this Court had in mind when it was considering the fact that OPM is not only responsible for considering the availability of catastrophic benefits like the mental health benefits that were available there, but also other forms of benefits in the cost of the subscribers, the cost of the taxpayer, and the vitality of the program. All these things are factors that OPM must consider in the course of their negotiations. But there's no statute that you can point to or regulation that you can point to that says there has to be a negotiation over everything, right? No, Your Honor. We're not saying that there has to be a negotiation over everything. What we're saying is that under Section 3902, subsection I, there does need to be a reasonable relationship between the rates that are charged and the cost of the benefits that are provided. We're saying that here there's not a reasonable relationship because Mr. Huron and his family are paying essentially the same rate as these large private sector employers' employees, but they're getting fewer benefits. The private sector employers are getting benefits A, B, C, and D, whereas the federal employees are only getting A, B, and C. And OPM does not provide any actuarial basis for the failure to provide D. Your Honor, I see that my time has expired. All right. If there are no more questions, we'll give you a couple minutes. Mr. Faffenroth. Good morning. May it please the Court. Judge Wilkins, I think you're exactly right. Under Doe v. Devine, this Court recognized that the negotiations for these kinds of plans year in, year out are very free-form. There's not a requirement, as this Court said, for a detailed record for study of the advanced justifications of each step taken or clearly ordered procedures. And as you were suggesting, Judge Millett, to recognize the claim here would basically open the door to any federal employee who said, I wish that this were covered, to then sue. And it would really mire the courts, I'm afraid, in quite a degree of micromanagement of every plan provided every year. The fact is that there are plans available. What if someone argued that the Secretary's administration of this process, this whole formulation of plans process, has been arbitrary and capricious? One example is, look at this. Everybody else has managed to cover durable medical equipment, but the Secretary has utterly failed. That's one example. Here's another example. Here's another example. And simply brought an arbitrary and capricious challenge to the way in which the Director has been handling this process. Could such a claim be brought? Would Doe allow that? I don't believe it would allow that kind of a claim unless it related to any of the kinds of care that Congress specifically provided for in the statutes. Well, it provided for that the plan is supposed to be comparable to what you have in the private marketplace. It's supposed to be competitive in that way. You're supposed to have things about cost-effective pricing, reasonable pricing. And so they simply said, imagine what came out. It's open season, and suddenly what you and I are looking at are five plans that are absolutely the worst in the entire country. They are three times more expensive than every other plan in the country, and the benefits are about 20 percent of what every other plan gets. It is an atrocious collection of plans, clearly evidencing a complete failure on the part of the Director to do any of the negotiations for comparable coverage, for comparable reasonable pricing that the statute requires. In that situation, could someone go, you've just dropped the ball? So in that situation, as to the inadequacy of the rates, they would be able to advance that claim, or if they excluded catastrophic coverage. The only thing we got is catastrophic coverage. But actually, I do want to correct one issue, which is that the provision, subsection I, that they're talking about comparability to private plans, that talks about the comparability of rates, not the comparability of benefits. And it is OPM's job, as numerous agencies have, to exercise its discretion. This is an area where I really do think that under Southern Utah Wellness Association, it really is well, a very broad... Well, that's a merits argument. I understand. But it is a very broad area of discretion for the agency. And so if people were unhappy that OPM had not come up with a range of options that was successful or really suitable to them, then if it was too expensive, they have a claim. If it doesn't cover catastrophic care, they have a claim. If it is simply, well, I want this specific benefit. If his claim were changed to, look, I shouldn't have to be paying for plans where the vast majority of the plan options that I have don't cover this most basic thing the same way everyone else does. No one should be paying this rate for plans that can't even do what every other plan does for durable medical equipment. We shouldn't be confronted with this. Then you're saying that claim could go forward? No, I'm not saying that. Why wouldn't that? I'm saying that if the claim was that the rates in the federal plans were uniformly too high for the benefits provided relative to what the rates in the private plans are, then you would have a claim they could proceed with under the APA. But it's simply an argument that I want this specific benefit for this specific small subset of people. In fact, plaintiff's complaint in paragraph 3 refers to the number of people who would get SGDs as, quote, a few. I mean, if every few people who want a specific item included, it all adds up. But does your claim matter if it's large? What if every woman wants mammograms covered? So it's large, it's not small, and you're not covering them, and everybody else does. Then why are we having to pay for insurance plans that just don't cover any rate whatsoever for plans that don't cover the same thing everyone else in the world does and 50% of the population needs it? I mean, I want to say that I find that hypothetical very, very, very unlikely. I'm sure in time and history that it wasn't. I understand, but today, and also, I mean, at the time, we'd have to compare private plans at the time as well. There may have been— I'm just asking you whether that falls within your view. I'm not saying that's what they do. I'm just saying does that fall within your view of a type of challenge that could be brought? I don't think that that is a challenge that can be brought under the statute because an OPM has substantial discretion. I'd like to— Substantial discretion, but is it unreviewable discretion or substantial discretion? It's substantial discretion. This is a very broad mandate. Sure, substantial discretion can still be reviewed. Well, this is actually—this type of provision of the necessary and desirable standard that actually applies to what benefits are in and what benefits are out, that really isn't reviewable. What is reviewable, again, are the rates, the comparability of those rates to private plans, and whether or not catastrophic care has been excluded. That's what Congress provided for, and that's what the statute would allow for review under the APA for. There's no law to apply about which specific benefits in and which specific benefits out. Well, to back up to standing, so it's well known, I assume you agree, that courts can always evaluate standing on their own. We have an obligation to always look at standing, even if the parties haven't raised it, and the parties couldn't agree to standing for jurisdiction in any form if we didn't actually have it. Is there a reverse sort of postulate that says when we look at standing, or we look at jurisdiction, and if there actually is jurisdiction, we have to acknowledge the jurisdiction we're assigned by Congress, even if the parties haven't made the right arguments? If— Imagine we think there—imagine, hypothetically, we thought there is jurisdiction. We actually thought there was jurisdiction. Congress assigned us jurisdiction, and Article III is perfectly content with that jurisdiction. But the party to the plaintiff didn't make the right legal argument in support of jurisdiction. Do we dismiss for lack of jurisdiction that we actually have, or not? Do ordinary rules of forfeiture— That's the place that's important to prove jurisdiction. They need to put before the court what the court needs to see in order to be able to make that— Maybe, but lots of times we've seen parties haven't even realized there's a jurisdictional problem. We do, and we figure it out ourselves. And I'm trying to figure out if this unique—the jurisdictional issue is not like normal issues. Correct. And I'm trying to figure out, is it only not—is it a one-way ratchet? It's only not normal in the sense that we can find the lack of jurisdiction regardless of what the parties say? Or can we actually also find jurisdiction regardless of what the parties say? It's the plaintiff's burden to prove the jurisdiction. It's not the court's burden to do it for them. So if the government were to come in a case and make the wrong argument for jurisdiction, but there actually was jurisdiction, and you're appellant now, and someone's just made the wrong argument for jurisdiction, but we actually had it, the court's duty at that point is to dismiss for lack of jurisdiction. Yeah, they haven't borne their burden. It's their burden to show to the courts that the courts have jurisdiction. Parties haven't borne their burden lots of times when we raise the issue sui esponte and then find it satisfied. Right. And I'd also add that, as the court has stated in Defenders of Wildlife, just because the court reaches the merits where standing wasn't at issue doesn't mean that the court found that standing wasn't at issue. No, I'm talking about cases where we've noticed a jurisdictional problem, discussed it, and then found it satisfied without the parties having raised the issue at all. We do that. Sure. So we don't always say, well, you didn't come forward and show it. We were able to find it in the record somehow. Right. I understand. I mean, there certainly are times when the court will sui esponte, consider whether jurisdiction exists, and look at what it has before it, and then say, fine, you have jurisdiction. But if the plaintiffs haven't put the necessary information before the court, which I believe is the case here, then that's a different situation. They do have the burden to make that showing. That's all I have. Is there anything else, Your Honor? If the court has no further questions. You didn't argue a waiver, by the way. You certainly raised multiple times in our brief that this was a newly raised argument on appeal. And then your motion for summary affirmance, once they raised procedural injury in their opposition to the motion, you said that that argument wasn't properly before the court had even replied, right? I believe so, yes. So we have done what we. . . I'm just disengaging between forfeiture and waiver. I think you pretty clearly argued forfeiture. Right. Okay. Thank you. Thank you. Does Mr. Fleming have it? Okay. Mr. Fleming, why don't you take two minutes? You're out of time, but take two minutes. I appreciate it, Judge Mason. Thank you. Your Honors, one of the factors that OPM has talked about is that this is a. . . that it can't be the case, they say, that every other. . . every plaintiff can just bring up a claim that OPM needs to include a certain benefit. And if they're allowed to do that, it's just going to start to add up. This is actually a very specific and unique case, in large part because this is a very specific exclusion that is included in many of these plans. And OPM has been aware of it. In the GEHA plan on page. . . the GEHA brochure on page 66 and 67 of the Joint Appendix, the GEHA specifically talks about what they're going to qualify as the durable medical. . . We're just trying to figure out, you know, we have to write an opinion. So you have to give us a legal rule that we could put in an opinion. How would we write an opinion that would say, normally folks don't have standing. . . but because this is a small group, and as a small group, it wouldn't take much to just . . . no one would even notice financially if you just included their benefit in. In those circumstances, people have standing. Is that the rule you want us to adopt? No, Your Honor. So the rule, first off, it would be appropriate for this Court to point out that . . . and what the result of those negotiations are. Their discretion is bounded by the statute. And there has to be that reasonable relationship between the rates and the benefits that are provided. It doesn't make sense, by the way, to talk about comparable rates without talking about comparable benefits. Under that logic, as long as, you know, employees are paying comparable rates . . . it doesn't matter if they just, you know, they get Band-Aids as their health care. As long as they're paying a comparable rate, under that logic, it's fine. But, the second point that the Court would make in its opinion is that . . . where there is not that reasonable relationship is demonstrated by the fact that . . . all these large private sector players are covering a specific benefit. And, OPM, first off, knows that its employees are not getting that benefit . . . because the exclusion limitation has been specifically brought to their attention. And, the fact that, you know, they have not demonstrated any negotiation . . . to either obtain that benefit or get some other benefit out of it . . . But, didn't they issue the call letters that specifically request this benefit in the quotes? Your Honor, I would disagree with that characterization of the call letter. First off, this is actually not the first time this Court has confronted the purpose of the call letters . . . in National Federation of Government Policing Defined Footnote 1. This Court recognized that the purpose of the call letters is merely to remind carriers of the regulatory obligations under renewal. Second off, they didn't request the benefit. They merely encouraged providers to review their policies towards covering these devices. Now, to get back to my original point about the specific exclusion. In the GHA plan, there are specific things that are listed or identified as examples of durable medical equipment. One essential example is a wheelchair. It's something that is used for a prolonged period of time. It's medically necessary. It's used only by the individual who is sick and is generally prescribed by a physician or professional. If you turn to the next page, they list the specific exclusions. They talk about the specific devices that are excluded. The first one is the durable medical equipment. Other examples include weights for weight lifting or other exercise equipment and wigs. Now, this would be an entirely different case if OPM had asked these carriers a very specific question. Why is a speech-sharing device more like a wig than a wheelchair? This is a device that Mr. Huron needs in order to live. It's a device that he needs in order to be able to communicate with his clients, to talk with his coworkers and speak with his children. And it's prescribed by a speech-language pathologist. It's something that's used for a prolonged period of time. And it's something that is only usable by him for his medical condition, primary laryngosclerosis. There's no basis for excluding this and treating it as though it's just a wig or exercise. That's simply unreasonable. It is unreasonable for OPM to acquiesce to carriers who are merely saving themselves a couple of extra bucks by not providing this benefit to federal employees when the same plan sponsors are providing it for the employees of large private sector employers. I understand my time is up. Thank you.
judges: Henderson, Millett, Wilkins